UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| LARRY TYUS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:07-162-JMH |
| | ) |
| V. | ) |
| | ) |
| KENTUCKY DEPT. OF VETERANS | ) **MEMORANDUM OPINION AND ORDER** |
| AFFAIRS, ET AL., | ) |
| | ) |
| Defendants. | ) |

\*\*\*\*    \*\*\*\*   \*\*\*\*

On December 10, 2007, Defendants Volunteers of America, Inc. ("VOA") and David Waters filed a Motion for Summary Judgment [R. 22] on the claims asserted in the *pro se* civil rights complaint filed by Plaintiff Larry Tyus ("Tyus") pursuant to 42 U.S.C. § 1983. [R. 2] After Tyus failed to file a response in opposition within 15 days as required by L.R. 7.1(c), on January 24, 2008, the Court entered an Order directing Tyus to file any response within 20 days, and admonishing Tyus that his failure to file a response constituted grounds for granting the motion. [R. 23] To date, the Court has not received any response from Tyus.

**I.   BACKGROUND**

In his complaint, Tyus indicated that while a participant in the Homeless Veterans Transitional Treatment Program ("HVTT Program") at a Veterans Administration ("VA") facility in Lexington, Kentucky, he was subjected to two incidents of racially-

1

discriminatory treatment by other program participants, and that the operator of the program, Volunteers of America ("VOA") failed to adequately address the problem.

On April 18, 2007, Tyus and co-participant Richite had an argument during which Richite referred to Tyus, an African-American, as a "black a.. boy." Facility staff intervened, and at a subsequent meeting with both men, VOA Program Administrator David Waters required Richite to apologize to Tyus for his comments under threat of termination from the program. On another occasion, co-participant Roundtree "slap[ped Tyus] in the back of the neck hard" instead of "just putting his hand on my shoulder" as was customary during a group hug and the end of a counseling session. Roundtree subsequently repeated this behavior with another African-American participant.

In a prior Order, the Court dismissed all but one defendant for failure to state a claim or on sovereign immunity grounds, but directed service of process upon VOA because the record failed to clearly reveal whether VOA's actions were undertaken "under color of state law" as required for liability to attach. [R. 6] VOA has filed its motion for summary judgment, asserting that the conduct complained of by Tyus in his Complaint (1) was not done "under color of state law"; and (2) fails to support any claim of racial discrimination. [R. 22]

II. DISCUSSION

    A.    **Tyus Waived Opposition to VOA's Motion by Failing to File**

2

**a Response**.

VOA filed its motion for summary judgment on December 10, 2007. [R. 22] Under Rule 7.1(c) of the Joint Local Rules for the Eastern and Western District of Kentucky and Rule 6 of the Federal Rules of Civil Procedure, Tyus was required to file any response in opposition to the motion within 15 days, with 3 additional days provided for service by mail, and hence his response was due on December 28, 2007.

When no response was timely filed, because Tyus is proceeding *pro se*, on January 24, 2008, the Court entered an Order advising Tyus of the need to file a response; that he must do so by February 13, 2008, and warning him that the Court may grant the motion if he failed to file a response. [R. 23]

Nonetheless, Tyus did not file any response. The docket does not indicate that any order sent by the Clerk of the Court was returned as undeliverable. Further, on July 23, 2007, Tyus filed a Notice of Change of Address [R. 12] with the Court, indicating that Tyus was actually aware of the need to keep the Court advised of his current address. The record is therefore devoid of any indication that Tyus's failure to file a response was anything other than a deliberate choice. Under such circumstances, the Court can only conclude that Tyus has knowingly abandoned any opposition to VOA's motion for summary judgment, and it therefore should be granted. *Scott v. State of Tennessee*, 1989 WL 72470, at **2 (6th Cir. 1989) (unpublished disposition) ("if a plaintiff

3

fails to respond or otherwise oppose a defendant's motion [to dismiss], then the district court may deem the plaintiff to have waived opposition to the motion.")

> **B.     VOA's Public Funding is Not Sufficient to Establish that it Acted "Under Color of State Law."**

Even if Tyus had not abandoned his opposition to VOA's motion for summary judgment, the Court would conclude - on the admittedly limited record before it - that summary judgment would be proper.

Summary judgment should be granted where, even viewing the facts alleged in a light most favorable to the non-movant, the nonmovant fails to present sufficient evidence to sustain a jury verdict in his favor with respect to at least one essential element of his claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

An indispensable requirement of a claim asserted under Section 1983 is that the person or entity whose conduct is complained of must have undertaken such action clothed with the authority of the state; that is, it must have acted "under color of state law." Purely private conduct, no matter how discriminatory or wrongful, is not actionable under the civil rights laws.  *American Mfrs. Mut.*

4

*Ins. Co. v. Sullivan*, 526 U.S. 40 (1999).

The typical defendant in a civil rights action is a person employed directly by the state to carry out its functions and directives. But even a private party may be named as a defendant in a civil rights action if that person's actions are "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). This requirement is satisfied in three situations. The first is where the person or private entity is performing a "public function," one traditionally performed exclusively by the state, such as holding elections or exercising eminent domain. *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978). The second, "state compulsion" circumstance is found where the state grants the private entity such coercive power that its actions must be deemed attributable to the state. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Third, where there is a closely "symbiotic relationship" between the state and the private entity, as where the state is intimately involved in the challenged private conduct, the acts of the private entity constitute "state action." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

Here, VOA is not a state agency but rather a private not-for-profit corporation. It is carrying out a program which is fully funded by state and federal grants. However, the participants' involvement in the program is purely voluntary - they may leave at any time. The record does not indicate the extent to which, if at

5

all, state or federal regulation broadly describes the program's goals or precisely sets forth the means of achieving them. Jane Burks, President of VOA, has tendered an affidavit in which she explains that while "[t]he program is jointly funded in the form of grants from the United States Department of Veterans Affairs and the Kentucky Department of Veterans Affairs ... neither plays an active role in the administration or operation of the facility. The VOA staff independently exercises their own expertise and discretion in the day to day operation of the program."

On this record, the Court concludes that VOA's conduct at issue in this case does not qualify as state action. The program operated by VOA offers assistance to homeless veterans in making a successful transition off the streets. This activity is not a function traditionally performed by state governments, and therefore does not satisfy the "public function" test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (private not-for-profit mental health center under contract with county did not perform "public function" so as to be state actor for purposes of employee's claim of wrongful termination). The evidence of record also indicates that VOA's response to the incident was guided not by state regulation or intervention, but rather by Waters' exercise of his independent professional judgment. Therefore the state did not lend its coercive authority to VOA under the "public compulsion" test. *Siskaninetz v. Wright State University*, 175 F.Supp.2d 1018, 1021 (S.D. Ohio 2001). Finally, the mere presence

6

of substantial public funding does not, without much more, suggest the kind of closely "symbiotic relationship" required to render VOA's actions "fairly attributable to the state." *Crowder v. Conlan*, 740 F.2d 447, 450 (6th Cir. 1984).

Under these facts, the Court concludes that VOA's conduct in addressing individual acts of race-based discrimination by program participants is not guided by state law. Accordingly, its allegedly inadequate response thereto does not constitute "state action." Absent state action, Tyus's Complaint fails to state a claim upon which relief may be granted, and must be dismissed. *See, e.g., Pol Sella v. SER Jobs for Progress Nat., Inc.*, 11 F.Supp.2d 170, 174-75 (D.Puerto Rico 1998) (not-for-profit job service corporation's receipt of state funding insufficient to establish that corporation's termination of employee without due process constituted "state action" to permit Section 1983 claim).

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Defendant Volunteers of America's Motion for Summary Judgment [R. 22] is **GRANTED.**

2. The Complaint [R. 2] is **DISMISSED WITH PREJUDICE.**

This the 14th day of August, 2008.



**Signed By:**

*Joseph M. Hood*

**Senior U.S. District Judge**